FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

2008 JUL 25 ℙ 3: 41

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

AvalonBay Communities, Inc.
2900 Eisenhower Avenue, 3rd Floor
Alexandria, VA 22314

              Plaintiff,

    v.

Tetra Tech, Inc.
3475 East Foothills Boulevard
Pasadena, CA 91107
SERVE ON: Resident Agent,
CT Corporation System,
4701 Cox Road, Suite 301
Glen Allen, VA 23060

and

Tetra Tech MM, Inc. a/k/a MFG, Inc.
4900 Pearl East Circle
Suite 300 W
Boulder, Colorado 80301
SERVE ON: Resident Agent,
The Corporation Trust Company
1209 Orange Street
Wilmington, Delaware 19801

and

Arthur Willden
Longmont, Colorado 80504

           Defendants.

Case No. *1:08cv777*
*TSE/TRJ*

**VERIFIED COMPLAINT AND JURY DEMAND**

COMES NOW the Plaintiff, AvalonBay Communities, Inc. ("AvalonBay" or "Plaintiff"),

and for its Verified Complaint (the "Complaint") states as follows:

## Nature of the Case

1.      This action seeks recovery of millions of dollars that Tetra Tech, Inc. ("Tetra Tech"), Tetra Tech MM, Inc. a/k/a MFG, Inc. ("MM"), and Arthur Willden (collectively referred to herein as the "Defendants") stole from AvalonBay. Defendants conspired with San Jose Water Conservation Corp. ("San Jose"), Michael P. Schroll ("Schroll"), James Willden, and Past Time Environmental Services, LLC ("Past Time") to steal the money. Specifically, the Defendants agreed to pay illegal bribes and kickbacks to James Willden, a former AvalonBay employee, in exchange for his awarding contracts on behalf of AvalonBay to Tetra Tech and/or MM. Among other things, the Defendants awarded fake contracts to San Jose for purposes of funneling bribes and kickbacks to James Willden. James Willden and Defendants also agreed to use Past Time, a Virginia limited liability company owned by James Willden, to funnel additional kickbacks to James Willden. By this action, AvalonBay seeks to recover all damages suffered by AvalonBay as a result of Defendants' fraudulent scheme and other tortious acts.

## Parties

2.      Plaintiff AvalonBay is a Maryland corporation with its principal place of business in Alexandria, Virginia.

3.      On information and belief, Tetra Tech, Inc. is a Delaware corporation with its principal place of business in Pasadena, California.

4.      On information and belief, Tetra Tech MM, Inc. a/k/a MFG, Inc., is a Delaware corporation with its principal place of business in Colorado. On information and belief, MFG, Inc. became Tetra Tech MM, Inc. in 2006 or 2007; and Tetra Tech MM, Inc. may have merged into Tetra Tech, Inc. in December 2007.

5.      On information and belief, Defendant Arthur Willden is a resident of the State of

Colorado.  His address is in Longmont, Colorado 80504.  Arthur Willden is the brother of former

AvalonBay employee James Willden.  On information and belief, Arthur Willden is, or until

very recently was, a senior employee of Tetra Tech or MM with supervisory authority over the

MM office in Fort Collins, CO.

### Jurisdiction

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity

of citizenship between the Plaintiff and the Defendants and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and

28 U.S.C. § 1367.  Count VI states a cause of action arising under the laws of the United States.

The remaining counts in this Complaint are so related to the claim in Count VI that they form

part of the same case or controversy under Article III of the United States Constitution.

8.      Defendant Tetra Tech is subject to personal jurisdiction in the Commonwealth of

Virginia because, during the relevant time period, Tetra Tech engaged in "a persistent course of

systematic and substantial business activities" in Virginia.  Among other things,

- On information and belief, Tetra Tech maintains eight offices in the Commonwealth of Virginia;

- Tetra Tech regularly sent communications into Virginia to solicit work from AvalonBay, a Virginia resident;

- Tetra Tech negotiated contracts and/or contract modifications with AvalonBay, a Virginia resident.  On information and belief, Defendant Tetra Tech conducted the negotiations by placing telephone calls to and/or emailing AvalonBay in Virginia and/or by faxing and/or mailing or emailing documents into Virginia;

- Tetra Tech agreed to perform specific services for AvalonBay in Virginia;

- Tetra Tech sent invoices into Virginia demanding payment from AvalonBay;

- On information and belief, Tetra Tech regularly communicated with AvalonBay in Virginia regarding the supplies and/or services that Tetra Tech had agreed to provide AvalonBay; and

- Tetra Tech accepted millions of dollars in payments from AvalonBay for the services/supplies Tetra Tech agreed to provide. Those payments were sent from Virginia.

9.    Defendant MM is subject to personal jurisdiction in the Commonwealth of Virginia because, during the relevant time period, MM engaged in "a persistent course of systematic and substantial business activities" in Virginia. Among other things,

- MM regularly sent communications into Virginia to solicit work from AvalonBay, a Virginia resident;

- MM negotiated contracts and/or contract modifications with AvalonBay, a Virginia resident. On information and belief, Defendant MM conducted the negotiations by placing telephone calls to and/or emailing AvalonBay in Virginia and/or by faxing and/or mailing or emailing documents into Virginia;

- MM agreed to perform specific services for AvalonBay in Virginia;

- MM sent invoices into Virginia demanding payment from AvalonBay;

- On information and belief, MM regularly communicated with AvalonBay in Virginia regarding the supplies and/or services that MM had agreed to provide AvalonBay; and

- MM accepted millions of dollars in payments from AvalonBay for the services/supplies MM agreed to provide. Those payments were sent from Virginia.

10.    Tetra Tech and MM also are subject to personal jurisdiction in the Commonwealth of Virginia pursuant to Va. Code Ann. § 8.01-328.1.A., subsections 1-4. Tetra Tech and MM were transacting business in Virginia, and this action arises from Tetra Tech's and MM's actions in Virginia. Similarly, Tetra Tech and MM contracted to supply services in Virginia; and this action arises, in part, from Tetra Tech's and MM's contracts to supply such services. Furthermore, Tetra Tech and MM caused tortious injury to AvalonBay by act or

4

omission in Virginia. Tetra Tech and MM regularly did business or solicited business or engaged in other persistent courses of conduct in Virginia. Finally, Tetra Tech and MM caused tortious injury to AvalonBay in Virginia by act or omission outside of Virginia.

      11.    Defendant Arthur Willden is subject to personal jurisdiction in the Commonwealth of Virginia because, during the relevant time period, he conducted acts outside of the Commonwealth of Virginia that caused harm inside in Virginia. Among other things,

- On information and belief, Arthur Willden regularly caused letters and emails to be sent into Virginia to implement contracts between Defendants Tetra Tech and/or MM and AvalonBay, a Virginia resident, pursuant to his scheme to defraud AvalonBay;

- On information and belief, Arthur Willden regularly conducted telephone calls with and emailed James Willden in Virginia and/or faxed and/or mailed or emailed documents into Virginia to implement the scheme to defraud AvalonBay;

- Arthur Willden regularly transmitted correspondences to AvalonBay in Virginia and to his co-conspirator James Willden in Virginia;

- Arthur Willden conspired with James Willden, a Virginia resident, to cause harm to AvalonBay's business in Virginia;

- Arthur Willden agreed to funnel kickback payments to James Willden through Past Time Environmental Services, LLC, a Virginia limited liability company, that, on information and belief, was founded by James Willden and located in James Willden's house in Virginia; and

- Arthur Willden sent emails to James Willden in Virginia instructing James Willden to mail checks from Virginia to antique dealers to pay for purchases made by Arthur Willden.

      12.    Defendant Arthur Willden also is subject to personal jurisdiction in the Commonwealth of Virginia pursuant to Va. Code Ann. § 8.01-328.1.A, subsection 1-4. Arthur Willden conducted acts outside the Commonwealth of Virginia that caused harm inside Virginia that gave rise to this action. And, Defendant Arthur Willden caused tortious injury to AvalonBay by act or omission in Virginia. Finally, Defendant Arthur Willden regularly solicited

business or engaged in other persistent courses of conduct in Virginia. And, Arthur Willden caused tortious injury to AvalonBay in Virginia by act or omission outside of Virginia.

## Venue

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## Facts

14.    Tetra Tech, together with its subsidiaries and other related business entities, has approximately 8,500 employees and 275 offices worldwide. Tetra Tech holds itself out as an expert on consulting, engineering, and technical services related to environmental matters. Until approximately December 2007, MM was a subsidiary of Tetra Tech. At all times relevant to this Complaint, MM regularly entered into contracts in the name of Tetra Tech, corresponded using Tetra Tech letterhead, and conducted business under the name of Tetra Tech.

15.    San Jose is a plumbing company located in Temecula, California, with fewer than 10 employees. San Jose specializes in providing low-flow toilets. On information and belief, San Jose is not licensed to perform and has not performed environmental work or mold remediation and is not licensed to perform any work outside of California.

16.    Schroll owns or controls San Jose.

17.    AvalonBay is a national real estate investment trust engaged in the development, construction, acquisition, renovation, and management of apartment communities in numerous markets throughout the United States.

18.    At all times relevant to the Complaint, Tetra Tech and/or MM employed Arthur Willden in a managerial position with supervisory and accounts payable authority at Tetra Tech's and MM's offices located in Fort Collins, Colorado.

19.    On information and belief, Tetra Tech and/or MM continue to employ, or until very recently employed, Arthur Willden.

20.    At all times relevant to the Complaint, until November 30, 2006, AvalonBay employed James Willden.

21.    At all times relevant to the Complaint, until approximately November 30, 2006, James Willden was responsible for supervising preventative maintenance, remedial repairs and routine capital improvements at communities owned and/or managed by AvalonBay. During this time, approximately 15 regional and local engineering managers reported to James Willden.

22.    As supervisor of the regional and local engineering managers, James Willden's responsibilities included establishing priorities for work, developing budgets, and reviewing and executing contracts, and approving invoices for payment.

23.    At all times relevant to this Complaint, James Willden acted outside the scope of his authority in entering into fraudulent schemes with the Defendants and others to steal money from AvalonBay and concealing that theft from AvalonBay. At all times relevant to this Complaint, Defendants assisted James Willden in stealing money from AvalonBay and concealing that theft from AvalonBay.

## The San Jose-Schroll-James Willden Scheme

24.    In or about November 2006, AvalonBay began an investigation into San Jose based on AvalonBay's concern that James Willden may have awarded fake contracts to San Jose in exchange for kickbacks from San Jose and/or Schroll. On or about November 30, 2006, just before he was scheduled to meet with external investigative consultants who were investigating the San Jose matter, James Willden resigned from AvalonBay.

25.    In or about March 2007, AvalonBay filed suit against San Jose and Schroll (Case No. 1:07cv306, United States District Court for the Eastern District of Virginia) to recover over $3 million in moneys that San Jose and Schroll had stolen from AvalonBay pursuant to the scheme between San Jose, Michael P. Schroll and James Willden.  Pursuant to that scheme, between September 2005 and September 2006, James Willden agreed to award fake contracts directly to San Jose for work at AvalonBay properties that San Jose was not licensed or qualified to perform and that San Jose had no intention of performing.  In exchange, San Jose and/or Schroll agreed to pay kickbacks to James Willden.  That case sought recovery of the funds that AvalonBay had paid directly to San Jose as a result of the scheme.

26.    The Court entered Judgment in favor of AvalonBay in Case No. 1:07cv306 on or about April 2, 2008.  The damages sought in this case against Defendants are different from the damages awarded in Case No. 1:07cv306 against San Jose and Schroll.  The fraud against and the related damages to AvalonBay that were the subject of Case No. 1:07cv306 are different from the fraud of Defendants and related damages described herein, although San Jose and Schroll also participated with Defendants in the fraud described herein.

**Defendants' Fraudulent Scheme**

27.    From approximately June 2003 through June 2007, Defendants arranged to pay and paid bribes and kickbacks to James Willden in exchange for receiving contracts from AvalonBay.  In return for the bribes and kickbacks from Defendants, James Willden arranged for AvalonBay to award contracts to Tetra Tech and MM.  Tetra Tech and/or MM submitted invoices to AvalonBay under such contracts and received payments from AvalonBay.

28.    As a direct result of Defendants' fraudulent acts, AvalonBay awarded numerous contracts to Tetra Tech and MM between 2003 and 2006.  The contracts fraudulently obtained by

Defendants covered work at AvalonBay properties in Virginia, California, the District of Columbia, Illinois, Massachusetts, Maryland, New Jersey, New York and Washington.

29.    As a direct result of Defendants' fraudulent acts, AvalonBay paid $6,474,714.02 to Defendants Tetra Tech and MM. The invoices submitted by Tetra Tech and/or MM between 2003 and 2007 under the contracts fraudulently obtained by Defendants from AvalonBay are identified in **Exhibit A,** attached hereto.

30.    On information and belief, Toby Wright, Daniel D. Overton and/or Craig Hamilton, all employees of Tetra Tech or MM, executed the contracts listed on Exhibit A on behalf of Defendants Tetra Tech and/or MM.

31.    But for Defendants' fraudulent acts, AvalonBay would not have entered into any of the contracts or made any of the payments identified in Exhibit A.

32.    Defendants conspired with James Willden to fraudulently arrange for Tetra Tech and/or MM to be retained by AvalonBay as a national vendor to provide primarily environmental consulting and environmental remediation services (primarily related to mold) at AvalonBay communities throughout the country. The size, number, scope of work (and necessity), and prices of these contracts were fraudulently set by Tetra Tech, MM, Arthur Willden and James Willden for the purpose of providing bribes and kickbacks to James Willden and enriching Defendants.

33.    As part of their fraudulent scheme, between May 2004 and September 2006, unbeknownst to AvalonBay, Defendants awarded fake subcontracts to San Jose for work on AvalonBay properties in the approximate amount of $2,483,634.00. Copies of the fake Tetra Tech-San Jose Subcontracts and related addenda at issue in this case are attached hereto as **Exhibit B**.

34.    Specifically, on information and belief, acting on behalf of and/or at the direction of the Defendants, Thomas Shepherd, Toby Wright, Daniel D. Overton, and Merle Maass, all employees of Tetra Tech and/or MM, executed contracts with San Jose in the name of Tetra Tech and/or MM (or one of its predecessors), knowing that the subcontracts were for work that Tetra Tech and/or MM never intended San Jose to perform.

35.    Tetra Tech and/or MM awarded contracts to San Jose purportedly for San Jose to perform the following services, among others, at AvalonBay properties that were subject of the contracts fraudulently obtained by Defendants from AvalonBay: (i) nationwide technical and other consulting support; (ii) nationwide mold evaluations; (iii) nationwide asbestos evaluations; (iv) nationwide lead consulting; (v) training material development; (vi) evaluation of PCE Regulations (PCE is a synthetic chemical used for dry cleaning of fabrics and for metal-degreasing operations); and (vi) lead-based paint summary and evaluation. San Jose was not licensed or qualified to perform the subcontracts that Tetra Tech and/or MM awarded to San Jose to perform at AvalonBay properties. Tetra Tech and/or MM, as a national expert in mold and other environmental matters, did not have a legal business reason to contract with San Jose, a small California-licensed plumbing company, for the subcontract work or to pay San Jose for the work.

36.    Defendants awarded the subcontracts to San Jose knowing that San Jose was not licensed and/or qualified to perform the work covered by those subcontracts, and knowing that San Jose had no intention of performing the work covered by the subcontracts.

37.    Defendants awarded the fake subcontracts to San Jose as a means for Defendants to funnel and conceal bribes and kickbacks paid to James Willden or others to defraud AvalonBay.

38.     On information and belief, Defendants approved payments of invoices that San Jose submitted to Tetra Tech and/or MM for work that Defendants knew never had been performed at the AvalonBay properties.  And, on information and belief, Defendants paid San Jose for the invoices knowing that San Jose would, in turn, pay bribes and kickbacks to James Willden or others on behalf of the Defendants.

39.     On information and belief, Defendants Tetra Tech and/or MM paid San Jose for work that San Jose did not perform, from the funds that Defendants fraudulently obtained from AvalonBay to finance bribes and kickbacks to James Willden and others.  A list of payments made by Tetra Tech and/or MM to San Jose, which total $2,483,634.00, is attached as **Exhibit C.**

40.     Between January 13, 2005, and October 5, 2006, San Jose paid James Willden at least $1,850,101.00 with respect to San Jose's work for "Tetra Tech (MFG), Inc."  On information and belief, those payments were bribes and kickback payments from Defendants to James Willden.  *See* **Exhibit D,** attached hereto.

41.     San Jose paid James Willden at least $3,306,676.00 in additional amounts purportedly related to San Jose's work for "AvalonBay" and/or specific AvalonBay properties.  On information and belief, those payments or a portion of those payments also were bribes and kickbacks from Defendants to James Willden.

42.     On information and belief, James Willden shared the proceeds of the bribes and kickbacks with Arthur Willden by, among other things, paying for antique purchases made by Arthur Willden.

43.     Had AvalonBay known that Defendants were entering into fake subcontract agreements with San Jose, which in turn was paying bribes and kickbacks to James Willden on behalf of Defendants, AvalonBay would not have entered into any contracts with Defendants.

44.     San Jose and Schroll concealed the part of Defendants' fraudulent scheme that involved the San Jose-Tetra Tech Subcontracts. Among other things, in November 2006, AvalonBay asked San Jose and Schroll to provide a list of clients for whom San Jose had provided services other than plumbing services. San Jose and Schroll provided a list that omitted Tetra Tech and MM. In so doing, San Jose and Schroll falsely represented that San Jose did not have any contractual relationship with Tetra Tech or MM even though San Jose had received approximately $2.5 million from Tetra Tech to perform environmental services.

**The Concealment and Further Fraudulent Acts of Defendants**

45.     At all times relevant to this Complaint, Defendants concealed from AvalonBay that Defendants had paid substantial bribes and kickbacks to obtain contracts and payments from AvalonBay.

46.     On information and belief, Arthur Willden instructed other employees of Tetra Tech, MM and/or other Tetra Tech companies that "[i]f AVB [AvalonBay] asks for costing, please tell them all costing comes out of the Fort Collin[s] office." Arthur Willden asserted that such an approach was necessary because otherwise "James has no opportunity to add on any cost he wants as a buffer" to the Tetra Tech and/or MM bid.

47.     As part of Defendants' fraudulent scheme, in or about July 2005, James Willden arranged for AvalonBay to pay Defendants Tetra Tech and MM $100 per apartment for certain mold wipe down cleaning services even though AvalonBay employees already had arranged for vendors to perform the work at significantly lower rates. For example, in June 2006, AvalonBay

employee Frank Beninati scheduled Spotless Cleaning Co. ("Spotless") to do "wipe down"

cleanings of the apartments at two AvalonBay communities in Massachusetts. Spotless agreed to

perform the work directly for AvalonBay at the price of $15 per apartment. On information and

belief, Defendants and James Willden rearranged the planned work so that Defendant Tetra Tech

or MM would pay Spotless to perform the work at the same $15 per apartment rate, and Tetra

Tech and/or MM would bill AvalonBay the $100 per apartment for the work performed by

Spotless. On information and belief, Defendants and James Willden employed similar

arrangements with other third-party vendors including, among others:  (i) LC Janitorial, which

agreed to charge AvalonBay $50 per apartment; and (ii) A&A Maintenance, which also had

agreed to charge AvalonBay $50 per apartment. On information and belief, Defendant Tetra

Tech or MM contracted with both LC Janitorial and A&A Maintenance at the $50 per apartment

rate while charging AvalonBay the $100 per apartment rate. In most of these cases, Defendants

arranged for Tetra Tech and/or MM to perform the mold wipe downs using contractors that

AvalonBay already was using (and would have used, if James Willden had not intervened to

further his and Defendants' fraudulent scheme)  and charged AvalonBay higher amounts than the

contractors already had agreed to accept from AvalonBay. The only reason Defendants arranged

for this work to be performed through Tetra Tech and/or MM was to steal money from

AvalonBay.

      48.     Arthur Willden and James Willden conspired to conceal that Arthur Willden was

the primary contact for the work that Defendants Tetra Tech and MM performed for AvalonBay.

Among other things, on information and belief, Arthur Willden directed MM employee Kristen

Burt to be the point of contact for all email correspondence between AvalonBay and Defendants,

even though Arthur Willden was in fact directing and coordinating Defendants' activities with AvalonBay.

49.    Similarly, on information and belief, on or around September 19-21, 2006, Arthur Willden drafted back-dated cost proposals to send to James Willden for the AvalonBay files to conceal from AvalonBay and others Defendants' scheme with James Willden. On information and belief, Arthur Willden directed MM employees Bob Provost and/or Merle Maass to sign the back-dated proposals. Alternatively, Arthur Willden signed the back-dated proposals on behalf of Bob Provost and/or Merle Maass. And, on information and belief, Arthur Willden directed Kristen Burt to send the back-dated cost proposals to AvalonBay.

50.    Defendants lied to AvalonBay by submitting invoices to AvalonBay under the fraudulently obtained Tetra Tech-AvalonBay Contracts without revealing that the purpose of the invoices was to steal money from AvalonBay.

51.    On information and belief, Arthur Willden directed other employees in the Fort Collins office of Tetra Tech to remove his name from emails prior to forwarding them to James Willden's AvalonBay email address, in furtherance of hiding the conspiracy.

52.    After James Willden's employment at AvalonBay terminated, Arthur Willden obtained a Tetra Tech email address for James Willden for his use. Thereafter, James Willden used Tetra Tech letterhead and identified himself as a Tetra Tech project manager to Tetra Tech customers.

53.    On or about January 30, 2007, James Willden also formed Past Time. On information and belief, between February 2007 and June 2007, Arthur Willden drafted invoices for James Willden in the name of Past Time for submission to MM. And, Arthur Willden approved those invoices for payment by MM. Some of the invoices related to work allegedly

performed by Past Time at AvalonBay properties even though Past Time had not performed any such work.

54.    The Past Time invoices were drafted by Arthur Willden and submitted to MM pursuant to an agreement between Arthur Willden and James Willden to use the Past Time invoices as a mechanism to "pull out" approximately $10,000 monthly from money that Tetra Tech and MM had fraudulently obtained from AvalonBay. *See* **Exhibit E**, attached hereto.

55.    On information and belief, other employees at the Fort Collins office of Tetra Tech and/or MM, including, but not limited to, Craig Hamilton and Bob Provost, knew that Tetra Tech had engaged James Willden and was paying money to James Willden after James Willden's employment with AvalonBay terminated. *See* **Exhibit F**, attached hereto.

56.    By correspondence dated June 27, 2007, Craig Hamilton, at Arthur Willden's suggestion, wrote to AvalonBay on Tetra Tech letterhead to communicate that he was the President of MM and that James Willden was not employed by Tetra Tech and/or MM. *See* **Exhibit G,** attached hereto. Mr. Hamilton made this representation to AvalonBay even though Mr. Hamilton knew at the time he made the representation that James Willden was performing work for Tetra Tech and/or MM and was receiving money from Tetra Tech and/or MM.

57.    Arthur Willden forwarded a copy of Mr. Hamilton's June 27, 2007 correspondence to James Willden on or about June 27, 2007. *See* **Exhibit H**, attached hereto.

58.    Arthur Willden fraudulently represented to others, including but not limited to Atria Senior Living, that James Willden was a Tetra Tech employee, by giving out James Willden's "official" Tetra Tech email address and by giving out James Willden's home address in Virginia as the mailing/shipping address for "Tetra Tech Inc." *See* **Exhibit I**, attached hereto.

59.     James Willden, in conspiracy with Arthur Willden and Tetra Tech and/or MM, represented to Atria Senior Living, that he was a "Project Manager" for Tetra Tech. *See* **Exhibit J**, attached hereto.

60.     Thereafter, with the knowledge and approval of Tetra Tech, Arthur Willden and other Tetra Tech employees, James Willden held himself out as a Tetra Tech Project Manager and used Tetra Tech letterhead and a Tetra Tech-issued email address.

61.     After James Willden's resignation from AvalonBay, Tetra Tech paid compensation to James Willden either as an employee or as an independent contractor, as a way of further funneling funds to James Willden as compensation for his part in Defendants' scheme or conspiracy.

## Count I
### (Fraud and Deceit)

62.     AvalonBay incorporates paragraphs 1 through 61 herein as if restated in full.

63.     Between 2003 and October 2006, Defendants fraudulently induced AvalonBay to enter into contracts with Defendants Tetra Tech and MM.

64.     Defendants concealed their fraudulent acts from AvalonBay

65.     Defendants cheated AvalonBay by using certain Tetra Tech and/or MM contracts with AvalonBay and fake subcontracts with San Jose to receive $2,483,634 of payments from AvalonBay for work at or related to AvalonBay communities that San Jose never performed.

66.     As part of Defendants' fraud, Defendants paid San Jose under "dummy contracts" related to AvalonBay work, and San Jose used such payments to pay bribes and kickbacks to James Willden in exchange for award of contracts to Defendants Tetra Tech and MM.

67.     In reliance on Defendants' fraudulent acts, AvalonBay awarded contracts to Defendants Tetra Tech and MM and paid $6,474,714.02 to Tetra Tech and MM.

68.    Defendants, along with James Willden, fraudulently and repeatedly represented to AvalonBay that Tetra Tech's and/or MM's work for AvalonBay (which was based on Tetra Tech's and/or MM's recommendations as an environmental expert) was necessary and appropriate, and that Tetra Tech and/or MM had completed all of the work under the Tetra Tech-AvalonBay Contracts, including the work covered by the fake Tetra Tech-San Jose contracts, for which Tetra Tech and/or MM was seeking payment from AvalonBay.

69.    Defendants submitted invoices from Tetra Tech and/or MM to AvalonBay for payment, knowing that the Tetra Tech and/or MM work that was invoiced was fraudulently obtained through Defendants' arrangement to bribe James Willden and knowing that San Jose's subcontract work had not been performed.

70.    James Willden approved payments to Tetra Tech and/or MM, knowing that the Tetra Tech and/or MM work that was invoiced was fraudulently obtained through Defendants' arrangement to bribe James Willden and knowing that San Jose's subcontract work had not been performed. At all relevant times, James Willden was acting as an agent of Defendants and was receiving compensation from Defendants.

71.    Defendants' representations identified above were false, as were the representations by their co-conspirators James Willden, San Jose and Schroll, identified above.

72.    Defendants, James Willden, San Jose and Schroll made the representations intentionally and knowingly, with the intent to mislead AvalonBay into executing and paying for the Tetra Tech–AvalonBay Contracts, none of which AvalonBay would have entered into had the co-conspirators' scheme of unperformed "dummy" contracts, bribes and kickbacks been known by AvalonBay.

73.    Defendants' representations identified above and James Willden's, San Jose and Schroll's representations identified above related to material facts.

74.    AvalonBay reasonably relied on the representations of Defendants and their co-conspirators identified above when making direct payments to Tetra Tech that totaled $6,474,714.02 (including $2,483,634 for work that San Jose never performed).

75.    Defendants are jointly and severally liable for all damages to AvalonBay that were caused by the schemes of Defendants and their co-conspirators to defraud AvalonBay.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count I and against Defendants in the amount of $6,474,714.02 and all costs of investigating Defendants' fraud, plus interest, attorneys' fees and costs, and for other damages, in such amounts as may be proven at trial. Alternatively, AvalonBay prays that judgment be entered in its favor against Defendants in the above amounts, less reasonable amounts actually paid by Defendants to untainted arm's-length subcontractors for work performed at AvalonBay properties.

### Count II
### (Breach of Contract Against Defendants Tetra Tech and MM)

76.    AvalonBay incorporates paragraphs 1 through 61 herein as if restated in full.

77.    Defendants Tetra Tech and MM are party to numerous contracts with AvalonBay, as identified in Exhibit A.

78.    Implied in each contract between Defendants Tetra Tech and MM and AvalonBay is a duty of good faith and fair dealing.

79.    Defendants Tetra Tech and MM breached the duty of good faith and fair dealing by participating in the scheme described herein without disclosing the scheme to AvalonBay. Among other things, Defendants breached the duty of good faith and fair dealing by charging

Defendants inflated prices to fund bribes and kickbacks Defendants agreed to pay James Willden

without disclosing that arrangement to AvalonBay.

80.    Under the Master Services Agreement that Defendants Tetra Tech and MM had

with AvalonBay, Defendants agreed to:

> [C]omply with all applicable statutes, rules, regulations,
> ordinances, and orders of the United States and of any state or
> political subdivision including, without limit, licensing and
> certification requirements, environmental laws, health and safety
> laws, worker health and safety laws and laws pertaining to labor
> wages, hours and other conditions of employment.

Master Agreement, ¶ 4.c.(ii).  *See* **Exhibit K**, attached hereto.

81.    Under the standard AvalonBay contracts to which Defendants Tetra Tech and

MM fraudulently induced AvalonBay to enter, Defendants Tetra Tech and/or MM agreed to:

> [P]erform the work described in this Contract, in accordance with
> all applicable provisions of Federal, State, and Local Laws, rules
> and regulations. . . .

*See* **Exhibit L**, attached hereto.

82.    Defendants' actions described herein were contrary to applicable law.

83.    Defendants Tetra Tech and MM legally were obligated to deal fairly and in good

faith with AvalonBay.

84.    Defendants Tetra Tech and MM legally were obligated to comply with the terms

and conditions of their contracts with AvalonBay.

85.    Defendants Tetra Tech and MM breached Defendants' duty of good faith and fair

dealing and otherwise failed to comply with the terms and conditions of their contracts with

AvalonBay.

86.    AvalonBay was damaged as a result of Defendants Tetra Tech and/or MM's

breach of their duty of good faith and fair dealing and Defendants Tetra Tech and/or MM's

19

failure to adhere to the duties and obligations Defendants agreed to in their contracts with AvalonBay.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count II and against Defendants in the amount of $6,474,714.02, plus interest, attorneys' fees and costs, and for other damages, in such amounts as may be proved at trial. Alternatively, AvalonBay prays that judgment be entered in its favor against Defendants in the above amounts less reasonable amounts actually paid by Defendants to untainted arm's-length subcontractors for work performed at AvalonBay properties.

### Count III
### (Fraudulent Unilateral Mistake Against Defendants Tetra Tech and MM)

87.     AvalonBay incorporates paragraphs 1 through 86 herein as if restated in full.

88.     AvalonBay was mistaken regarding a basic assumption on which AvalonBay made the contracts with Tetra Tech and MM. Specifically, AvalonBay was mistaken that Defendants Tetra Tech and MM entered into contracts with AvalonBay at reasonable and legitimate prices based on arm's-length negotiations and that Defendants' recommendations to AvalonBay would be made in good faith and not for the purpose of perpetrating a fraudulent scheme against AvalonBay. AvalonBay was mistaken in its belief that Defendants were not inflating their prices to include bribes and kickbacks for James Willden and were not obtaining large volumes of work from AvalonBay through such bribes and kickbacks. As noted above, AvalonBay did not know that Defendants together with James Willden designed the scheme described herein, even though Defendants had that knowledge.

89.     AvalonBay's mistake was material to the agreed exchange of performance under the contracts between Defendants Tetra Tech and MM and AvalonBay. But for AvalonBay's

mistake, AvalonBay would not have entered into the contracts with Defendants Tetra Tech and MM or made payments thereunder.

90.    AvalonBay did not assume the risk of its mistake. Specifically, AvalonBay did not assume the risk that Defendants would fraudulently steal money from AvalonBay. AvalonBay did not assume the risk that Defendants would pay James Willden compensation to act as their agent.

91.    Defendants had reason to know of AvalonBay's mistake because, among other things, as alleged herein, Defendants, including Arthur Willden who supervised the Fort Collins, CO office of MM, and other employees of MM and/or Tetra Tech took deliberate steps to fraudulently conceal the scheme from AvalonBay. Defendants also made fraudulent representations to AvalonBay that gave rise to AvalonBay's mistake.

92.    Alternatively, the effect of AvalonBay's mistake is such that it would be unconscionable for the contracts between AvalonBay and Defendants Tetra Tech and MM to be enforced as written.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count III and against Defendants and that the Court rescind, or alternatively, reform each of the contracts identified in Exhibit A to deduct the total contract amount that was obtained by Defendants Tetra Tech and MM as a result of the fraudulent scheme, i.e., reducing the total collective amount of the contracts by $6,474,714.02, or other such amount as may be proved at trial.

### Count IV
### (Unjust Enrichment Against Defendants Tetra Tech and MM)

93.    AvalonBay incorporates paragraphs 1 through 75 herein as if restated in full.

94.    In the alternative, Defendants wrongfully invoiced AvalonBay for work and accepted payment from AvalonBay for bribes and kickbacks that Defendants agreed to pay

21

James Willden in exchange for award of contracts at inflated prices to Defendants Tetra Tech and MM and/or approval of Defendants Tetra Tech and MM's invoices.

95.    Defendants knew that, at the time of contracting with AvalonBay and/or at the time of invoicing AvalonBay, Defendants would funnel bribes and kickbacks to James Willden through subcontracts with San Jose that never were intended to be performed, and never would be performed by San Jose.

96.    Plaintiff conferred a benefit on Defendants by awarding contracts to Defendants Tetra Tech and MM that were fraudulently obtained and by paying Defendants Tetra Tech and MM under those contracts for what ultimately were bribes and kickbacks Defendants had (unbeknownst to Plaintiff) agreed to pay James Willden.

97.    Defendants knew that AvalonBay was unaware of the scheme described herein. Accordingly, Defendants knew that AvalonBay was conferring a benefit on Defendants that was undeserved.

98.    Defendants accepted and never have returned the benefit, i.e., the payments from AvalonBay totaling $6,474,714.02 that Defendants accepted to, among other things, pay bribes and kickbacks to James Willden through San Jose in exchange for his participation in the scheme described herein.  Under these circumstances, it would be inequitable for Defendants to retain the payments AvalonBay made to Defendants because the payments were the result of the fraudulent scheme described herein.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count IV and against Defendants in the amount of $6,474,714.02, plus interest, attorneys' fees and costs, and for other damages, in such amounts as may be proved at trial.  Alternatively, AvalonBay prays that judgment be entered in its favor against Defendants in the above amounts less reasonable

amounts actually paid by Defendants to subcontractors for work performed at AvalonBay properties.

## Count V
### (Common Law & Statutory Conspiracy (VA Code Ann. § 18.2-499-500) Against Defendants Tetra Tech, MM and Arthur Willden)

99.    AvalonBay incorporates paragraphs 1 through 75 herein as if restated in full.

100.    On information and belief, Tetra Tech, MM and Arthur Willden, together with James Willden, San Jose and Schroll, fraudulently conspired to steal money from AvalonBay and agreed to pay bribes and kickbacks to James Willden in exchange for Arthur Willden's and James Willden's approval of and authorization of payment for invoices that the parties knew to be fraudulent.

101.    On information and belief, Defendants, together with James Willden, San Jose and Schroll, fraudulently conspired to conceal from AvalonBay that (i) Defendants, and others were bribing James Willden to obtain work for Tetra Tech and/or MM from AvalonBay, (ii) San Jose was engaged by Tetra Tech and/or MM to perform work on AvalonBay's behalf, when Tetra Tech and/or MM never intended for San Jose to perform work, and (iii) San Jose did not perform the work required by the Tetra Tech-San Jose Subcontracts.

102.    On information and belief, Defendants worked together with James Willden, San Jose and Schroll to submit invoices and/or obtain or retain payment from AvalonBay for work that never was performed.

103.    The wrongful conduct of Defendants, James Willden, San Jose and Schroll described herein was willful and intentional and without legal justification.

104.    Defendants' wrongful conduct resulted in substantial monetary damages to AvalonBay.

23

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count V and against Tetra Tech, Inc., Tetra Tech MM, Inc. a/k/a MFG, Inc. and Arthur Willden in the amount of three-fold the damages suffered by AvalonBay, or $19,424,142.06, plus interest, the costs of this lawsuit, attorneys' fees and costs, and any lost profits that may be proved at trial.

**Count VI**
**(Civil RICO, 18 U.S.C. §§ 1961, *et seq.***
**Against Defendants Tetra Tech, MM and Arthur Willden )**

105.   AvalonBay incorporates paragraphs 1 through 75 and 99-104 herein as if restated in full.

106.   Between 2003 and October 2006, Defendants, and San Jose and Schroll, committed multiple acts of mail fraud, as defined by 18 U.S.C. § 1341, and/or wire fraud, as defined by 18 U.S.C. § 1343. Between 2003 and October 2006, Defendants, together with San Jose and Schroll, also committed multiple acts in violation of 18 U.S.C. § 1957, Engaging in Monetary Transactions in Property Derived from Specified Illegal Activity. Specifically, during that time period, Defendants knowingly participated in a scheme to defraud AvalonBay of money by obtaining work for Tetra Tech and/or MM by bribing AvalonBay's employee James Willden. Further, in connection with such bribery, Defendants misrepresented to AvalonBay that Defendants Tetra Tech and MM were entering into contracts with AvalonBay and/or making environmental recommendations to AvalonBay as a result of arm's-length negotiations and that such contracts were not otherwise tainted by bribes and kickbacks. Defendants also misrepresented that work that was subcontracted to San Jose had been completed even though the Defendants knew San Jose had not been performed that work. Defendants used other legal entities, such as Past Time and San Jose, to further their schemes. Defendants also exploited and used in their conspiracy other innocent third parties (such as Spotless) to further their schemes.

24

Defendants' schemes involved Arthur Willden (James Willden's brother and a managing employee of Tetra Tech); other employees of the Fort Collins, CO office of Tetra Tech and/or MM, including Merle Maass, Kristen Burt, Bob Provost, and others; Craig Hamilton (President of MM, located in the Boulder, CO office); James Willden (a "Project Manager" at Tetra Tech after he left AvalonBay); Tetra Tech; MM; San Jose; Schroll; Past Time; and possibly others. Pursuant to the scheme, among other things, Defendants, James Willden, San Jose and Schroll misrepresented to AvalonBay that Tetra Tech, MM and San Jose work orders were legitimately obtained from AvalonBay and that work that was subcontracted to San Jose for AvalonBay had been completed when San Jose had not performed the work. Tetra Tech and/or MM, through its employee Arthur Willden, submitted to James Willden fraudulent invoices, which James Willden approved and arranged for payment from AvalonBay to Tetra Tech. Those payments were used, in part, to pay San Jose for the San Jose-Tetra Tech Subcontract work that San Jose never performed. On information and belief, San Jose and Schroll, in turn, paid illegal bribes and kickbacks to James Willden from the monies that San Jose received illegally through Tetra Tech and/or MM, which monies Tetra Tech and/or MM had obtained from AvalonBay. Those bribes and kickbacks were transferred from San Jose by check to James Willden, who deposited the proceeds from the bribes and kickbacks into his bank account and who made payments to third parties on behalf of himself and possibly others, including his brother Arthur Willden.

107.    Arthur Willden, other employees of Tetra Tech and/or MM, James Willden, San Jose, Schroll and Past Time used mails and/or interstate wire facilities in furtherance of their scheme. Specifically, Defendants sent or caused to be sent "dummy" contracts through the mail to San Jose. Defendants, San Jose and Schroll systematically caused false and misleading invoices to be sent through the mail or wires. Those invoices indicated that work that was

subcontracted to San Jose for AvalonBay had been completed as specified in the invoices when Defendants knew that San Jose had not in fact completed that work. Defendants sent the invoices with the intent of misleading and defrauding AvalonBay. And, the mailing and/or transmittal of the invoices to AvalonBay were steps in Defendants' schemes to defraud AvalonBay or, alternatively, were incidental to the essential part of the Defendants' scheme to defraud AvalonBay.

108.    San Jose and/or Schroll similarly used mails and/or interstate wire facilities in furtherance of the scheme by causing bribes and kickback payments to be sent to their co-conspirator James Willden, through the mails and/or interstate wires on numerous occasions between 2004 and 2006. On information and belief, those payments were made by check from San Jose to James Willden. On information and belief, most of these payments were made in excess of $10,000, and collectively the payments totaled several million dollars. The payments were in exchange for James Willden's participation in the schemes to defraud AvalonBay, and they were derived from the monies that Defendants and San Jose obtained illegally from AvalonBay. Each such payment amounted to a violation of 18 U.S.C. § 1957.

109.    On information and belief, Defendants misrepresented to others, including Atria Senior Living, that James Willden was an employee or representative of Tetra Tech in order to obtain business. On information and belief, those misrepresentations were transmitted through the mails and/or interstate wires.

110.    Defendants' and their co-conspirators' commission of multiple instances of mail fraud and/or wire fraud, and the separate violations of 18 U.S.C. § 1957, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1962(a). Specifically, both mail fraud and wire fraud are predicate acts as defined in 18 U.S.C. § 1961, as is a violation of 18 U.S.C. § 1957.

The commission of mail and/or wire fraud, and the violation of 18 U.S.C. § 1957, was part of Defendants' regular way of doing business.

111.    AvalonBay was injured in its business by reason of this pattern of racketeering activity. Specifically, AvalonBay relied on Defendants' fraudulent misrepresentations submitted by mail and/or interstate wire, and James Willden's misrepresentations provided in part in exchange for illegal kickbacks from San Jose and Schroll, in paying Tetra Tech approximately $6,474,714.02. But for this pattern of racketeering activity, AvalonBay would not have engaged Tetra Tech or MM (or San Jose) for any of the work for which they billed AvalonBay.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count VI and against Tetra Tech, Inc., Tetra Tech MM, Inc. a/k/a MFG, Inc. and Arthur Willden in the amount of three-fold the damages suffered by AvalonBay, or $19,424,142.06, plus interest, the cost of the suit, including attorneys' fees and costs.

**Count VII**
**(Tortious Interference with At Will Contract Against**
**Tetra Tech, MM and Arthur Willden)**

112.    AvalonBay incorporates paragraphs 1 through 75 and 99-111.

113.    At all times relevant to this Complaint until approximately November 30, 2006, James Willden was an employee of AvalonBay pursuant to an at will employment contract.

114.    James Willden's employment contract with AvalonBay required James Willden to act in good faith and deal fairly with AvalonBay while employed by AvalonBay. Similarly, pursuant to his employment contract with AvalonBay, James Willden owed the duty of loyalty to AvalonBay.

115.    At all times relevant to this Complaint, Defendants knew that James Willden was an employee of AvalonBay pursuant to an at will employment contract. At all times relevant to

this Complaint, Defendants were aware of the above duties owed by James Willden to AvalonBay under his employment contract with AvalonBay.

116.     At all times relevant to this Complaint, Defendants intentionally interfered with AvalonBay's employment contract with James Willden by offering and giving bribes to James Willden and kickbacks to James Willden in exchange for contract awards to Defendants Tetra Tech and MM.

117.     Defendants' offering and giving bribes and kickbacks to James Willden was improper.

118.     As a result of Defendants' intentional interference with AvalonBay's employment contract with James Willden, James Willden breached his employment agreement with AvalonBay by, among other things, accepting bribes and kickbacks from the Defendants and making contract awards to Tetra Tech and MM on behalf of AvalonBay.  By accepting the bribes and kickbacks and awarding contracts to Tetra Tech and MM, James Willden breached the duty of good faith and fair dealing and the duty of loyalty required by his contract with AvalonBay.

119.     AvalonBay was damaged as a result of Defendants' intentional interference with AvalonBay's employment contract with James Willden.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count VII and against Defendants in the amount of $6,474,714.02, plus interest, attorneys' fees and costs, and for other damages, in such amounts as may be proved at trial.  Alternatively, AvalonBay prays that judgment be entered in its favor against Defendants in the above amounts less reasonable amounts actually paid by Defendants to untainted arm's-length subcontractors for work performed at AvalonBay properties.

## Count VIII
### (Aiding and Abetting Breach of Fiduciary Duty of Loyalty Against
### Tetra Tech, MM and Arthur Willden)

120.    AvalonBay incorporates paragraphs 1 through 75 and 99-119.

121.    As an employee of AvalonBay, James Willden had a fiduciary duty of loyalty to AvalonBay during the entire period of his employment.

122.    At all times relevant to this Complaint until November 30, 2006, Defendants had actual knowledge that James Willden owed a fiduciary duty of loyalty to AvalonBay.

123.    James Willden breached his fiduciary duty of loyalty by acting for personal monetary gain at the expense of AvalonBay in entering into the scheme with Defendants described herein. Specifically, James Willden breached his fiduciary duty of loyalty to AvalonBay by awarding contracts to Defendants Tetra Tech and MM in exchange for bribes and kickbacks that Defendants agreed to pay James Willden in exchange for those contracts.

124.    Defendants recruited, enticed and/or participated in James Willden's breach of his fiduciary duty by offering to give and giving bribes and kickbacks to James Willden in exchange or James Willden's participation in the scheme described herein.

125.    AvalonBay sustained damages as a direct result of Defendants' aiding and abetting James Willden's breach of fiduciary duty to AvalonBay.

126.    Defendants are liable to AvalonBay for such damages.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on Count VIII and against Defendants in the amount of $6,474,714.02, plus interest, attorneys' fees and costs, and such other amounts as may be proved at trial. Alternatively, AvalonBay prays that judgment be entered in its favor against Defendants in the above amounts less reasonable amounts actually paid by Defendants to untainted arm's-length subcontractors for work performed at AvalonBay properties.

29

## Count IX
### (Punitive Damages)

127.    AvalonBay incorporates paragraphs 1 through 75 and paragraphs 97 through 111 herein as if restated in full.

128.    Defendants' actions alleged herein were willful, intentional and without legal justification.

129.    Defendants acted with complete disregard of the rights of AvalonBay and/or for the purpose of causing injury to AvalonBay.

WHEREFORE, AvalonBay prays that judgment be entered in its favor on this Count IX and against Tetra Tech, Inc., Tetra Tech MM, Inc. a/k/a MFG, Inc., and Arthur Willden and that punitive damages be awarded AvalonBay under Counts I, V and VI.

### JURY DEMAND

AvalonBay demands a trial by jury on all issues so triable.

Respectfully submitted,

Christopher A. Jones, VSB 40064
cajones@wtplaw.com
Thomas C. Mugavero, VSB 30214
tmugavero@wtplaw.com
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
703-280-9260
Fax: 703-280-8948
*Counsel for AvalonBay Communities, Inc.*

*220861*

## VERIFICATION

I, David A. Hutchins, verify and declare under 28 U.S.C. § 1746 that:

1.    I am the Director of Internal Audit of Plaintiff AvalonBay Communities, Inc.

2.    I have read the foregoing Verified Complaint and it is, based on my personal knowledge, true.

I verify and declare under penalty of perjury that the foregoing statements are true and correct.

_____
David A. Hutchins

Dated:  July 23, 2008

*220861*

31