IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| AVALONBAY COMMUNITIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:08-cv-777 |
| | ) | |
| ARTHUR R. WILLDEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff AvalonBay Communities, Inc.'s ("AvalonBay")

Motion for Summary Judgment Against Defendant Art Willden (Dkt. No. 111).  The

Court finds that Mr. Willden is judicially and collaterally estopped from relitigating facts

to which he pled guilty in the prior criminal proceeding, and that those facts establish the

elements of Counts I, V, VI, VII, and VIII of the Complaint with the exception of the

claims related to Double Eagle.  Thus, the Court finds that AvalonBay is entitled to

summary judgment on these counts and awards $7,450,902 in trebled damages.

## I.      Background.

## A.      The Parties.

AvalonBay is a national real estate investment trust engaged in the development, acquisition, renovation, and management of apartment communities in numerous markets throughout the United States.  It has a corporate headquarters in Alexandria, Virginia. AvalonBay employed James Willden as Vice-President of Engineering until November 30, 2006.  During his employment, James Willden was responsible for managing all aspects of the engineering department, including supervising preventative maintenance, remedial repairs, and routine capital improvements at communities owned and managed by AvalonBay.

Defendant Tetra Tech, Inc. ("Tetra Tech") is a company that provides consulting, engineering, and technical services with a particular expertise in environmental matters. Tetra Tech employs roughly 8,500 people with 275 offices worldwide.  Tetra Tech employed Defendant Arthur Willden, the brother of James Willden.  Art Willden was the office manager for the Fort Collins, Colorado office.  In this capacity he supervised employees, communicated with clients, billed clients, and had accounts payable authority.  This authority allowed him to determine the manner in which vendor and subcontractor invoices were paid.

The San Jose Water Conservation Corporation ("San Jose Water") operates a plumbing business that specializes in low-flow toilets.  It is located in Temecula, California.  Michael Schroll is the owner and President of San Jose Water.  San Jose Water employed fewer than ten (10) employees.

Double Eagle Services ("Double Eagle") is an unincorporated business supposedly performing engineering and multifamily consulting work. It was operated as a sole proprietorship by Art Willden's wife Jodi Willden until June 2008, after which time it was operated by Art Willden.

## B.   The Fraud Conspiracy.

Around May 2004, James Willden recommended that AvalonBay retain Tetra Tech as a national vendor to provide environmental consulting and environmental remediation services – primarily mold related – at AvalonBay development communities throughout the country. Unbeknownst to AvalonBay, Art Willden held a supervisory position at Tetra Tech. At the direction of the Willden brothers, the two companies entered into a Master Services Agreement in May 2004. Under the MSA, Art Willden issued statements of work that called for Tetra Tech to perform mold inspection and remediation at various AvalonBay properties. AvalonBay's routine procedure for work contracts involves sending out each contract for competitive bidding. The final contract pricing then was negotiated by the regional engineering managers at the particular AvalonBay community where the work was to be performed. In this case, however, the Willden brothers conspired to bypass this competitive bidding process by preparing a number of "no bid" contracts going to San Jose Water. These "no bid" contracts were executed without the knowledge or consent of the regional or local engineering managers. According to the scheme, San Jose Water would do no work on the subcontract and would invoice Tetra Tech as though it had performed the work. Art Willden then arranged for Tetra Tech to pay San Jose Water for the subcontracted work. San Jose Water submitted the invoices to Art Willden at Tetra Tech, who approved them

for payment. Art Willden then submitted the Tetra Tech invoices to James Willden who approved them for payment by AvalonBay.

From about May 2004 until about October 2006, James Willden arranged for AvalonBay to pay Tetra Tech approximately $5,833,872. These payments were made through numerous checks sent through regular mail and Federal Express from AvalonBay's Alexandria, Virginia office to Tetra Tech's Fort Collins, Colorado office. From these proceeds, Schroll agreed to receive and did receive $2,483,634 from Tetra Tech for work that San Jose never performed – all approved by Art Willden. San Jose Water and Schroll made kickback payments to James Willden, who transferred valuable antiques, collectibles, gold coins and cash to Art Willden. The estimated value of these items was $359,000 for the physical items and $105,000 in cash.

Tetra Tech also subcontracted with Double Eagle for a portion of the work it was to perform for AvalonBay. In 2003 and 2004, Double Eagle submitted invoices to Tetra Tech for work on behalf of AvalonBay. These invoices were approved by Art Willden. According to AvalonBay, Tetra Tech paid Double Eagle $222,985 for work. The parties dispute whether Double Eagle performed this work and how much of the $222,985 stems from work performed on behalf of AvalonBay. According to AvalonBay, there is no evidence that any of the activities listed in the DoubleEagle invoices actually were performed. According to Art Willden, Double Eagle invoiced Tetra Tech for completed work for AvalonBay, which accepted this work as high quality. Further, Willden claims that a significant portion of the $222,985 figure relates to work that Double Eagle performed for Tetra Tech for entities other than AvalonBay.

**C.      Procedural History.**

4

The FBI investigated James Willden in 2007 and 2008, which culminated in a criminal action against him in this Court in October 2008: *United States v. James Willden*, Case Number 1:08-cr-420. On December 11, 2008, James Willden pled guilty to one count of conspiracy to commit mail fraud in connection with the fraud scheme. On March 13, 2009, this Court sentenced James Willden to 42 months of incarceration followed by three years of supervised release and entered a restitution order of $5,528,965.99. In October 2008, the government initiated a criminal action against Michael Schroll. Schroll pled guilty to one count of conspiracy to commit mail fraud on October 15, 2008, and was sentenced on January 23, 2009 to sixteen months in prison, three years of supervised release, and ordered to pay $1,905,209.00 in restitution.

AvalonBay also pursued civil remedies against James Willden, San Jose Water, and Michael Schroll. On April 2, 2008, the Court granted summary judgment for AvalonBay against San Jose Water and Schroll and awarded $9,135,196.00 (which included treble damages).[1]  On July 16, 2008, this Court granted summary judgment in favor of AvalonBay against James Willden, in the amount of $16,536,989.19. *See AvalonBay Communities, Inc. v. James Willden*, 2008 WL 2780983 (E.D. Va. 2008).

On July 25, 2008, AvalonBay filed its complaint against Art Willden and Tetra Tech. Tetra Tech and AvalonBay have settled. AvalonBay now seeks summary judgment against Art Willden on five counts: 1. Fraud and Deceit; 2. Common law and statutory conspiracy under Virginia Code § 18.2-499-500; 3. Civil RICO, 18 U.S.C. §§ 1961, *et seq.*; 4. Tortious Interference with Contract Rights; and 5. Aiding and Abetting

---

[1]      This order presently is on appeal to the Fourth Circuit.

Breach of Fiduciary Duty.  It seeks treble damages under both RICO and the Virginia Business Conspiracy statute.

On January 14, 2009, the Court stayed this civil case pending the result of the criminal proceedings against Art Willden.  On February 26, 2009, Art Willden pled guilty to one count of conspiracy to commit mail fraud and agreed to pay $2,483,634 in restitution to AvalonBay.  He also agreed to forfeit his interest in real property located in Colorado, subject to his wife's valid 50% interest in the property.  On May 29, 2009, Judge Hilton sentenced Art Willden to 30 months in prison, three years of supervised release thereafter, and restitution in the amount of $2,483,634.

In its motion for summary judgment, AvalonBay seeks damages in the amount of $2,706,619, comprised of $2,483,634 plus $222,985 in damages caused by Art Willden's approval of Tetra Tech invoices for work billed – but allegedly not performed – by Double Eagle.  AvalonBay seeks trebling of this amount for a total award of $8,119,857.

On June 19, 2009, the Court heard oral argument on AvalonBay's motion for summary judgment.  At oral argument the Court indicated its inclination to award summary judgment for AvalonBay on all five counts against Art Willden, and gave Willden thirty days to submit a supplemental pleading itemizing any amount(s) that should be subtracted from the $8,119,857 award sought by AvalonBay.  AvalonBay has responded to this supplemental pleading.  The Court has reviewed these materials and finds this case ripe for disposition.

## II.      Jurisdiction and Venue.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship) and has supplemental jurisdiction over the state

law claims under 28 U.S.C. § 1367.  Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b).

## III.   Legal Standard.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court should grant summary judgment where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Libby, Inc.*, 477 U.S. 242, 251-252 (1986).

## IV.   Discussion.

## A.   Estoppel.

Art Willden argues that several disputed issues of material fact preclude summary judgment on all five counts against him.  A threshold issue is whether Art Willden is estopped from contesting facts that he admitted during the criminal proceedings, which were incorporated by reference into his plea agreement via a "statement of facts." As explained below, the Court holds that the doctrines of judicial and collateral estoppel bar Willden from challenging the facts established beyond a reasonable doubt by his guilty plea to conspiracy to commit mail fraud.

In the Fourth Circuit, the doctrine of judicial estoppel can prevent a party in a civil action from re-litigating prior established facts underlying a criminal plea.  "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.  The purpose of the doctrine is to prevent a party from playing

fast and loose with the courts, and to protect the essential integrity of the judicial process." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995); *see also* Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo. Wash. L. Rev. 409, 435 (1987) ("Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefitted from in an earlier proceeding."); *McLaughlin v. Gholson,* 171 S.E.2d 816, 818 (Va. 1970) (a party may not "change his position to the prejudice of his adversaries in contravention of [a] stipulation freely entered into").

In *Lowery v. Stovall*, the Fourth Circuit held that judicial estoppel prevented a plaintiff in a Section 1983 civil case from disavowing facts underlying a guilty plea in a prior criminal case based on the same conduct. 92 F.3d 219, 223-224 (4th Cir. 1996). Lowery attempted to argue in the civil action that he did not maliciously attack an officer who stopped him, notwithstanding his prior guilty plea to maliciously causing bodily injury to a law enforcement officer. *Id.* The *Lowery* court articulated a three-factor test for when judicial estoppel may apply:

(1)     First, the party must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position to be estopped must be one of fact rather than law.

(2)     Second, the prior inconsistent position must have been accepted by the court.

(3)     Third, the party must be trying to intentionally mislead the court to gain unfair advantage.

*Id.* at 224.

8

The third factor is the "determinative factor" in the application of judicial estoppel. *Id.* at 224-225. The party must be intentionally seeking "unfair advantage" by disavowing a prior position; courts will not apply judicial estoppel "when a party's prior position was based on inadvertence or mistake." *Id.*

The *Lowery* court found these factors satisfied because Lowery had received the benefit of a reduced sentence through a guilty plea and then sought to repudiate those same facts in a civil action. "By pleading guilty, Lowery received a drastically reduced sentence . . . But, after receiving the benefit of the plea bargain, Lowery now wants to have it the other way, arguing that we should find that he did not maliciously attack Redd . . . we find this argument 'too much to take.'" *Id.* at 225.

This reasoning applies with equal force here. Willden is attempting to backtrack on the factual admissions underlying his guilty plea after receiving the benefit of a plea bargain and reduced sentence. In the criminal statement of facts Willden admitted,[2] among other things, that: (1) he and his brother James Willden "facilitate[d] a kickback scheme through Tetra Tech in connection with mold inspection and remediation at AvalonBay properties;" (2) Art Willden "agreed to approve for payment" subcontractor invoices from San Jose Water for work never done at AvalonBay properties; (3) "[i]n accordance with the plan, from May 2004 until October 2006," AvalonBay paid Tetra Tech $5,833,872 for environmental services performed under Tetra Tech supervision, that Tetra Tech in turn paid San Jose Water $2,483,634, and that this amount represented AvalonBay's loss as a result of the fraud conspiracy. In Willden's "Statement of

---

[2]   In the criminal statement of facts Willden admitted that "were the matter to proceed to trial," the government would prove these facts "beyond a reasonable doubt." Thus, Willden stipulated that the facts could be proven "beyond a reasonable doubt," a higher burden of proof than the preponderance standard applied at a civil trial.

Disputed Material Facts Creating an Issue Requiring Litigation," filed in connection with his opposition to AvalonBay's motion for summary judgment, he seeks to contest these same facts. He asserts that "[i]n all cases, Tetra Tech fully performed the work for which it was contracted to perform at the price agreed upon by contract with AvalonBay," and that "Arthur Willden performed thousands (1000s) of hours of work on AvalonBay projects . . . [e]xtensive evidence of work completed by Arthur Willden was provided during discovery . . . After reviewing this information, a fair minded jury would not return a verdict for the Plaintiff."

The first judicial estoppel factor from *Lowery* is met because Willden is seeking to contest facts established in the prior criminal proceeding. 92 F.2d at 224. The second factor is met because the Court accepted the prior statement of facts as a predicate for Willden's guilty plea. *Id.* The third factor is met because Willden took the benefit of a lesser sentence through his plea bargain, but now seeks to disavow the facts underlying that bargain in order to reduce his civil exposure. This is an intentional attempt to gain "unfair advantage" in the judicial process. *Id.* Accordingly, the Court holds that Willden is judicially estopped from contesting facts underlying his guilty plea.

This conclusion also is supported by the doctrine of collateral estoppel. The Fourth Circuit has applied collateral estoppel where a criminal defendant who accepted a guilty plea later sought to re-litigate issues in a civil proceeding. *United States v. Wight*, 839 F.2d 193, 195-197 (4th Cir. 1987). Wight pled guilty to using his official status to bring goods into India, and the court found that he could not challenge liability in a later civil suit filed by the United States for this same conduct. *Id.* at 195. "The doctrine of collateral estoppel may apply to issues litigated in a criminal case which a party seeks to

relitigate in a subsequent civil proceeding . . . [and] the criminal conviction may be a plea

agreement: a defendant is precluded from retrying issues necessary to his plea agreement

in a later civil suit." *Id.* Further, "it is well-established that the doctrine of collateral

estoppel may apply to issues litigated in a criminal case . . . [and] the prior litigation may

be in the form of a plea agreement." *United States v. Moore*, 765 F. Supp. 1251, 1255

(E.D. Va. 1991); *see also United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp.

248, 253 (E.D. Va. 1993).

The fact that AvalonBay was not a party to the criminal proceeding does not bar

application of collateral estoppel. The Fourth Circuit recognizes "nonmutual offensive

collateral estoppel," whereby a non-party to a previous action can "prevent a defendant in

the current action from relitigating issues already decided against him in that previous

action." *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 778 (D. Md. 2009) (citing *Parklane

Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). In order for nonmutual offensive

collateral estoppel to apply, the party asserting it must establish that: (1) the issue sought

to be precluded is identical to the one previously litigated; (2) the issue was actually

determined in the prior proceeding; (3) that determination was a critical and necessary

part of the decision in the prior proceeding; (4) the prior judgment must be final and

valid; and (5) the party to be estopped must have had a full and fair opportunity to litigate

the issue in the prior proceeding. *Id.* (citing *Sedlack v. Braswell Services Group, Inc.*,

134 F.3d 219, 224 (4th Cir. 1998)).

Under *Wight*, the Court holds that Willden is collaterally estopped from relitigating or otherwise challenging the facts established in the criminal proceeding.[3] This holding is buttressed by the five *Sedlack* factors on nonmutual offensive collateral estoppel. 134 F.3d at 224. Willden seeks to re-litigate facts that he has admitted would have been proven "beyond a reasonable doubt" at trial. Those facts were "critical and necessary" to the criminal plea and his acceptance of guilt. The plea agreement is a final and valid judgment, and Willden had a full and fair opportunity to litigate the allegations against him in the prior criminal proceeding. *Id.*; *Moore*, 765 F. Supp. at 1255 ("it is well-established that the doctrine of collateral estoppel may apply to issues litigated in a criminal case . . . [and] the prior litigation may be in the form of a plea agreement").[4]

Accordingly, the facts Willden admitted in his guilty plea are deemed established for purposes of AvalonBay's motion for summary judgment. As explained below, these facts support granting summary judgment for AvalonBay on all five counts.

**B.      Count I:  Fraud.**

---

[3]      Wight was not estopped from challenging the quantum of damages because "the specific damage award was not included as an essential part of Wight's plea agreement." *Id.* at 195. "Wight did not have access to his accounting records when he entered into the plea agreement. The government had seized these records, making it difficult for Wight to contest the $70,107 figure. At trial, it appears that Wight was not able fully and fairly to litigate the damages issue, as is required for collateral estoppel to apply." *Id.* at 195-196. Here, by contrast, the $2,438,634 figure for AvalonBay's damages was an explicit part of the criminal plea agreement. Willden had an opportunity to fully and fairly litigate the amount of damages in the criminal proceeding, and he agreed to pay restitution of this amount.

[4]      Willden argues that collateral estoppel does not apply because entering a plea of guilty in a criminal matter does not count as actually litigating an issue through to final judgment. This argument is not supported by Fourth Circuit precedent. *Wight*, 839 F.2d at 195-197 ("a defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit"); *Moore*, 765 F. Supp. at 1255.

AvalonBay asserts a claim against Art Willden for "fraud and deceit" under Virginia common law.[5] To establish a fraud claim under Virginia law, there must be: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). These elements are met here. In Art Willden's capacity as office manager for Tetra Tech, he knowingly approved San Jose Water's fraudulent invoices and sent them to AvalonBay. Detrimental reliance is established because AvalonBay sent checks totaling over $2.4 million for work not done in reliance on these fraudulent invoices. Art Willden knew that the work invoiced by San Jose Water was never completed, and he admitted intent to defraud in his guilty plea to conspiracy to commit mail fraud.

Nonetheless, Art Willden argues that the fraud claims are time-barred because AvalonBay did not exercise diligence in discovering the fraud. Virginia Code § 8.01-248 imposes a two-year statute of limitations on fraud claims, which begins to run from discovery or from when "by the exercise of due diligence reasonably should have been

---

[5]     Because the Court has diversity jurisdiction and supplemental jurisdiction over the state claims, the choice of law rules of the forum state (Virginia) apply. *Insteel Indus., Inc. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 483 (E.D. Va. 2003). Virginia applies the *lex loci delicti* doctrine for choice of law, under which the substantive rights are determined by the law of the jurisdiction where the tort occurred. *Jones v. R.S. Jones & Associates*, 431 S.E.2d 33, 34 (Va. 1993). This requires ascertaining where the "last event necessary to make [the party] liable for an alleged tort takes place." *Quillen v. Int'l Playtex*, 789 F.2d 1041, 1044 (4th Cir. 1986). AvalonBay reasonably relied on the fraudulent invoices in Virginia and cut checks to Tetra Tech in Virginia. Further, AvalonBay is a resident of Virginia and suffered injury here. *See Insteel*, 276 F. Supp. 2d at 486 (citing Restatement (First), Conflict of Laws § 377)). Thus, the Court will apply Virginia law to the state claims of fraud, business conspiracy, tortious interference with a business expectancy, and aiding and abetting a breach of fiduciary duty.

13

discovered." *Id.* Thus, the clock does not begin until AvalonBay discovered or reasonably should have discovered the scheme. James Willden approved work orders for Tetra Tech and San Jose Water projects on an ongoing basis until October 2006, and AvalonBay did not discover the fraud scheme between James Willden and San Jose Water until October 27, 2006, during a routine audit. This part of the scheme was based on direct contracts between James Willden and San Jose Water, not contracts involving Tetra Tech. AvalonBay did not discover Art Willden and Tetra Tech's role in the fraud until October 2007, when it received discovery from Tetra Tech in response to a subpoena issued in the civil case against San Jose Water and Michael Schroll.

Art Willden argues that AvalonBay should have discovered the fraud earlier. His argument is belied by the fact that James Willden had primary responsibility for managing all aspects of the engineering department, including supervising preventative maintenance and remedial repairs at AvalonBay communities. In this role he had authority for approving payment on these work orders and thus had ample opportunity to hide his tracks to further the conspiracy. Art Willden fails to point to any "specific facts showing a genuine issue for trial" as to whether AvalonBay failed to exercise due diligence in discovering the fraud. *See* Fed. R. Civ. P. 56(e)(2). In short, a scheme involving fraudulent invoices for remediation payments was perpetrated by the vice president in charge of approving invoices for remediation payments. Given this classic "fox guarding the henhouse" situation, AvalonBay could not reasonably have discovered the fraud earlier.

Accordingly, the Court finds that the two-year statute of limitations began to run when AvalonBay actually discovered Art Willden and Tetra Tech's role in the fraud – in

October 2007. Even assuming AvalonBay should have discovered Art Willden's role earlier, the Court finds that the earliest possible date upon which the statute commenced is October 27, 2006 – when the audit uncovered the James Willden/San Jose Water fraud and thereby put AvalonBay on notice that James Willden had been approving payments based on fraudulent invoices. Either way, the complaint filed July 25, 2008 was timely. *See* VA Code § 8.01-248.

Art Willden also argues that this action sounds in contract because the parties issued the work orders and submitted invoices pursuant to a Master Services Agreement between AvalonBay, Tetra Tech, and San Jose Water. He relies on *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344 (Va. 1998), in which a general contractor McDevitt entered into a contract with the Richmond Metropolitan Authority to build a stadium. 507 S.E.2d at 346-347. The contract specified certain design criteria and provided that McDevitt would submit "application for payment" forms certifying that the completed work conformed to the design specifications. *Id.* Upon discovering that McDevitt had failed to construct the stadium in accordance with the specifications, the Authority sued McDevitt for fraud based on alleged misrepresentations in the application for payment forms. *Id.* The Virginia Supreme Court held that the action sounded in contract because the source of McDevitt's duty was the design-build contract and the case essentially involved "allegations of negligent performance of contractual duties." *Id.* at 347. The Court, however, recognized that "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty . . . [but] the duty tortiously or negligently breached must be a

common law duty, not one existing between the parties solely by virtue of the contract."
*Id.*

*Metro Authority* is readily distinguishable from this case. AvalonBay does not allege negligent performance of duties arising from a contract, but rather that the Willden brothers conspired with each other and Michael Schroll to perpetrate a fraud scheme. As such, the case involves a classic fraud conspiracy and breaches of duties imposed by common and statutory law. To be sure, the conspiracy employed false invoices – funneled through Tetra Tech as a conduit – for mold remediation work that San Jose Water never completed. But these invoices were merely the means of effectuating the payments, which gave rise to AvalonBay's injuries.[6]

Moreover, there is no contract between AvalonBay and Art Willden here. He was not party to the Master Services Agreement, which created privity between AvalonBay and Tetra Tech. As such, there is no basis for AvalonBay to recover against Art Willden for a breach of contract.

For these reasons, the Court holds that AvalonBay is entitled to summary judgment on the fraud claim.

**C.    Count V: Business Conspiracy.**

---

[6]    Indeed, Willden's argument fundamentally misapprehends Virginia law. He seems to assume that wherever there is a contract between parties, the action must sound in contract. But where there has been an intentional and false representation and detrimental reliance, the harmed party may bring a fraud action notwithstanding the existence of a contract between the parties. *See Hitachi*, 166 F.3d at 628-629 (reversing district court's dismissal of fraud claims based on statements made during loan negotiations, which were brought in conjunction with breach of contract claims based on the loan documents); *see also Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741, 750 (E.D. Va. 2006).

AvalonBay argues that Art Willden is liable for treble damages under the Virginia Business Conspiracy statute, Virginia Code § 18.2-499, which basically prohibits concerted action intended to harm another's business. The statute provides that "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor." Section 500(A) of the statute provides for a civil remedy with treble damages, costs of suit, and attorney's frees. VA Code § 18.2-500(A). To recover in a civil action, the plaintiff must prove the conspiracy by clear and convincing evidence. *See Michigan Mutual Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 924-925 (E.D. Va. 2000); *William v. Dominion Technology Partners, LLC*, 265 Va. 280, 290 (2003). Further, the conspiracy statutes "merely require proof of legal malice, i.e., that [defendant] acted intentionally, purposely, and without lawful justification." *Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*, 453 S.E.2d 261, 267 (Va. 1995). "In turn, 'without lawful justification' means that the actions were taken 'to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.'" *Extreme 4X4 Center, Inc. v. Howery*, 65 Va. Cir. 469, 472 (Va. Cir. Ct. 2004) (quoting *Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)).

Here the established facts satisfy the elements of the Virginia business conspiracy statute. Art Willden and James Willden each pled guilty to conspiring to commit mail fraud and harm AvalonBay's business. The "clear and convincing evidence" standard is satisfied because Art Willden affirmed in his guilty plea that the facts would have been

17

proven beyond a reasonable doubt were the matter to proceed to trial.  Further, the criminal adjudication establishes that Willden took the actions without lawful justification.  *Hechler Chevrolet*, 337 S.E.2d at 748.

Accordingly, AvalonBay is entitled to treble damages, costs of suit, and attorney's fees.  VA Code § 18.2-500(A).

**D.    Count VI:  Civil RICO.**

To establish a civil RICO claim for a violation of Section 1962(c), a plaintiff must establish the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).[7]  Section 1962(d) prohibits a conspiracy to violate Sections 1962(a), (b), or (c).[8] RICO defines "racketeering activity" by incorporating a number of federal statutes, which comprise the "predicate acts" of racketeering.  *See* 18 U.S.C. § 1961(1).  One of these predicate statutes is mail fraud.  *Id.* (listing 18 U.S.C. § 1341 as a predicate act). "The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme."  *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996).

---

[7]    18 U.S.C. § 1962(c) states:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

[8]    18 U.S.C. § 1962(d) states:

"It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

A plaintiff can recover under RICO only if "he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.  This requires proof of proximate causation, *i.e.*, the injury to business or property must be "by reason of" the racketeering activity. *See* 18 U.S.C. § 1964(c).  Once an injury is established and quantified, the plaintiff is entitled to treble damages, costs, and reasonable attorney's fees. *Id.*

In the prior opinion granting summary judgment for AvalonBay against James Willden, *AvalonBay v. Willden*, 2008 WL 2780983 (E.D. Va. 2008), this Court held that James Willden was liable for conducting a RICO enterprise through a pattern of mail fraud.  As to the "conduct" and "enterprise" elements, the Court reasoned as follows:

> The association of AvalonBay, Tetra Tech, and San Jose as client, vendor, and subcontractor, and AvalonBay and San Jose as client and vendor constitutes an enterprise that was conducted and controlled by Defendant on AvalonBay's part, Art Willden on Tetra Tech's part, and Schroll on San Jose's part. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (holding that an enterprise can be both legitimate and illegitimate business).

The Court found that the Willden brothers' conduct met the element of mail fraud, a RICO predicate act. *See* 18 U.S.C. § 1341 (defining mail fraud); 18 U.S.C. § 1961(1) (listing mail fraud as a predicate act)[9]:

> Defendant, Art Willden, and Schroll perpetrated their fraudulent scheme by transferring copies of contracts, invoices, releases, and payments through the United States Postal Service mail and through Federal Express, a private interstate mail carrier . . .  More specifically, a Federal Express tracking number is recorded

---

[9]     AvalonBay also pled predicate acts of wire fraud, 18 U.S.C. § 1343, and Engaging in Monetary Transactions in Property Derived from Specified Illegal Activity, 18 U.S.C. § 1957.  It is likely that Art Willden's receipt of gold coins and valuable antiques and collectibles – derived from proceeds from the fraud scheme – constitutes a violation of Section 1957.  Because these crimes were not the basis of the plea agreement, however, the estoppel arguments are weaker.  Thus, the Courts holds Art Willden liable for conspiracy to violate RICO through predicate acts of mail fraud.

on each copy of the San Jose checks. These transfers constitute a use of the mail in furtherance of their fraudulent scheme.

A "pattern of racketeering activity," requires "at least two acts of racketeering activity . . . within ten years" of each other. 18 U.S.C. § 1961(5). RICO targets "the threat of continuing activity," not "sporadic activity." *Sedima*, 473 U.S. at 497 n.14. "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989) (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989)). "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (internal citations omitted).

The Court previously held that the ongoing fraudulent conduct between 2003 and 2007 met the pattern requirement:

> Defendant's conduct unquestionably constitutes a pattern of racketeering activity. Over the course of many months between 2003 and 2007, Defendant, Tetra Tech, Art Willden, San Jose, and Schroll prepared no-bid contracts, under which San Jose was to provide subcontract services for mold testing and mold remediation services. San Jose submitted invoices for work that was never performed to Art Willden at Tetra Tech who approved them for payment. Art Willden then submitted the invoices to Defendant who approved them for payment by AvalonBay. Defendant approved over one hundred invoices for payment from AvalonBay to Tetra Tech totaling $6,477,082.58. Tetra Tech then made 27 separate payments to San Jose totaling $2,483,634.00, part of which became kickback payments to Defendant. All of these exchanges were made through the United States mail and Federal Express.

This reasoning is fully applicable in this civil RICO action against co-conspirator Art Willden.

In sum, Art Willden conducted a RICO enterprise – the association-in-fact between AvalonBay, Tetra Tech, and San Jose Water – through a pattern of mail fraud. He therefore violated Section 1962(c) of RICO. *Sedima*, 473 U.S. at 496. Moreover, the Court holds that Art Willden violated Section 1962(d) by conspiring to violate Section 1962(c) with James Willden and Michael Schroll. The Court grants summary judgment for AvalonBay against Art Willden on the Civil RICO count.

### E.   Count VII: Tortious Interference with Contract Rights.

AvalonBay alleges that Art Willden tortiously interfered with its contractual rights vis-à-vis James Willden. "[T]he elements necessary to support a cause of action for tortious interference with contract rights . . . are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted." *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 706 (Va. 2009). Here the established facts meet the elements of tortious interference. AvalonBay had a business expectancy of continued employment services from James Willden, Vice President of Engineering. Art Willden knew of this employment relationship and knew that James had the authority to approve invoices and execute contracts; indeed, James Willden's invoice approval authority was the centerpiece of the fraud conspiracy. Art Willden intentionally interfered with AvalonBay's business expectancy by conspiring with James Willden to defraud AvalonBay. AvalonBay suffered damage as a result by losing the honest services of its Vice-President of Engineering and by paying out over $2.4 million based on these

fraudulent invoices.  Accordingly, AvalonBay is entitled to summary judgment on this count.

**F.      Count VIII:  Aiding and Abetting a Breach of Fiduciary Duty.**

In general, an "employee's fiduciary duty to his employer prohibits the employee from acting in a manner adverse to his employer's interest." *Hilb, Rogal and Hamilton Co. of Richmond v. DePew*, 440 S.E.2d 918, 921 (Va. 1994).  In the earlier case against James Willden, the Court granted summary judgment for AvalonBay on its claim for breach of fiduciary duty of loyalty.  The Court reasoned:

> Defendant breached the fiduciary duty of loyalty owed to AvalonBay when Defendant failed to disclose the true nature of Art Willden's employment status at Tetra Tech.  Defendant further breached his fiduciary duty of loyalty to AvalonBay when he acted for personal monetary gain at the expense of AvalonBay when he executed contacts and caused invoices to be paid by AvalonBay to San Jose and to San Jose through Tetra Tech for services that were never provided.  AvalonBay sustained damages as a direct result of Defendant's breach of his fiduciary duty of loyalty to AvalonBay.

AvalonBay now seeks to hold Art Willden liable for aiding and abetting James Willden's breach of fiduciary duty.  Virginia law allows a third party to be liable for another party's breach of fiduciary duty when that third party knowingly participated in the breach.  *See Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 411-412 (Va. 2004).  To be liable, the third party must affirmatively aid the breach with the requisite *mens rea*, or culpable state of mind.  *Id.* at 413-414 ("unless [the defendant] actually knows a breach of fiduciary duty is occurring and participates with *mens rea* in the consummation of the breach, it should not be held liable for aiding and abetting the breach").

Art Willden is liable for aiding and abetting James Willden's breach of fiduciary duty of loyalty.  Art Willden knew that his brother James owed AvalonBay a duty of loyalty by virtue of James' employment relationship with the company.  Indeed, it was

James Willden's position of trust that allowed the fraud scheme to continue undiscovered for years. Art Willden knew that James Willden was processing invoices for work that was never completed, which was harming James Willden's employer AvalonBay. Art Willden facilitated this breach by knowingly approving these invoices sent from Tetra Tech. Accordingly, the Court holds that Art Willden is liable for aiding and abetting breach of fiduciary duty. *Halifax*, 604 S.E.2d at 413-414.

**G.     Double Eagle.**

AvalonBay also seeks an additional award of $222,986 for work allegedly billed out by Double Eagle. Because this amount was not part of Willden's admissions in the criminal plea, principles of estoppel do not apply. *See Wight*, 839 F.2d at195-197 (defendant not collaterally estopped from challenging quantum of damages in civil action where prior criminal plea did not establish amount of damages). After the hearing on the motion for summary judgment, the Court sought and received supplemental filings on the quantum of damages. Willden asserted that only $118,063 of the $222,986 amount related to work done by Double Eagle for Tetra Tech. As to the remaining $104,923, Willden asserts that Double Eagle completed this work and that AvalonBay accepted the work as high quality and paid Double Eagle for it.

The Court finds that genuine issues of material fact remain as to whether Double Eagle defrauded AvalonBay, whether Art Willden is liable for that fraud, and the amount of damages, if any. The Court therefore denies summary judgment on AvalonBay's claims pertaining to Double Eagle. Plaintiff shall notify the Court within thirty (30) days whether it intends to proceed on its claims relating to Double Eagle.

**H.     Damages.**

Art Willden pled guilty and admitted causing AvalonBay $2,483,634 in damages. As explained above, he is estopped from disclaiming liability for that amount of damages. Under RICO and the Virginia business conspiracy statute, AvalonBay is entitled to treble damages, costs of suit, and reasonable attorney's fees. Thus, the Court finds that AvalonBay is entitled to a judgment of $7,450,902.00, costs of suit, and reasonable attorney's fees.[10]

## III.    Conclusion.

For the reasons stated above, summary judgment in favor of AvalonBay is hereby GRANTED on Counts I, V, VI, VII, and VIII of the Complaint, with the exception of the claims related to Double Eagle.  An appropriate order shall issue forthwith.

August 7, 2009
Alexandria, Virginia

_____ /s/ ᏞᎤᏩ
Liam O'Grady
United States District Judge

---

[10]    AvalonBay has indicated that it considers the remedy of treble damages to be punitive damages, and thus elects not to pursue the punitive damages claim in its complaint.